IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| TERRY HAZELWOOD, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>Defendant. )<br>_____ ) | Civil No. 3:13cv416 (DJN) |

## MEMORANDUM OPINION

Terry Hazelwood ("Plaintiff") is 48 years old and previously worked as a builder and salesman in the construction field. On July 3, 2013, he filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") for impairments resulting from a vehicular crash caused by Plaintiff's intoxication. The Commissioner's decision was based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff did not have a severe impairment or combination of impairments, expected to last for twelve or more months, as defined by the Social Security Act ("Act") and applicable regulations. This matter is now before the Court by consent of the parties pursuant to 28 U.S.C § 636(c)(1) on Plaintiff's Motion for Summary Judgment (ECF No. 14), Plaintiff's Motion to Remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 17).

Plaintiff challenges the ALJ's denial of benefits, arguing that the ALJ erred in finding that Plaintiff's impairments were not severe impairments expected to last more than twelve months. (Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 16) at

13.) Plaintiff also argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician. (Pl.'s Mem. at 15.) Plaintiff further argues that the ALJ erred by failing to consider Plaintiff's obesity as a severe impairment. (Pl.'s Mem. at 17.) Defendant responds that substantial evidence supports the ALJ's severity determination and that Plaintiff's impairments were not severe for purposes of the Act. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 17) at 8.) Defendant also asserts that the ALJ properly discounted the opinion of Plaintiff's physician. (Def.'s Mem. at 9.) Defendant further argues that substantial evidence supports the ALJ's determination that Plaintiff's obesity was not a severe impairment. (Def.'s Mem. at 11.)

For the reasons discussed below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14), DENIES Plaintiff's Motion to Remand (ECF No. 15), GRANTS Defendant's Motion for Summary Judgment (ECF No. 17) and AFFIRMS the final decision of the Commissioner.

## I. Background

Because Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments were not severe impairments expected to last more than twelve months, in discounting the opinion of Plaintiff's treating physician and in finding that Plaintiff's obesity was not a severe impairment, Plaintiff's educational and work history, medical history, hearing testimony, third party function report and non-treating state agency physicians' opinions are summarized below.

### A. Plaintiff's Education and Work History

Plaintiff was 45 years old at the time of his alleged onset date of October 25, 2010. (R. at 131.) Plaintiff completed high school and attended welding and electric classes at community

college. (R. at 23.) Plaintiff worked as a salesman and a builder — building and selling gazebos, sheds and furniture. (R. at 26, 136-37.)

B. Plaintiff's Medical History

On October 25, 2010, Plaintiff drove his truck while intoxicated and struck a tree, a telephone pole and another vehicle. (R. at 290.) Plaintiff was injured and taken to Lynchburg General Hospital as a result of the crash. (R. at 290-91.) Plaintiff remained at the hospital for seventeen days and was treated for fractured bones, a cardiac contusion, multiple traumatic injuries and delirium tremens caused by alcohol withdrawal. (R. at 343, 367, 373-74.) While at the hospital, Daniel Carey, M.D. treated Plaintiff (R. at 346.) On November 9, 2010, Dr. Carey reported that Plaintiff "continue[d] to do remarkably well" and that Plaintiff was "able to climb two flights of stairs and walk in the hall with no assistance." (R. at 346.) On November 10, 2010, Plaintiff was discharged from the hospital. (R. at 378.)

On December 15, 2010, Plaintiff attended a follow-up appointment at Dr. Carey's office, the Cardiovascular Group. (R. at 342.) Plaintiff's attendants reported that Plaintiff had been doing well since he was discharged from the hospital. (R. at 343.) Plaintiff's cardiac contusion had improved and his ventricular tachycardia was stable with no sign of recurrence. (R. at 342.) A physical examination revealed that Plaintiff was generally well-developed, well-nourished and in no acute distress. (R. at 344.) Plaintiff's heart had a regular rate and rhythm with no rubs, murmurs or gallops appreciated. (R. at 344.) Plaintiff had no focal deficits and had no clubbing, cyanosis, edema or deformity in his extremities. (R. at 345.) On December 20, 2010, an echocardiogram indicated normal systolic function. (R. at 340-41.)

On January 5, 2011, Clarence E. Hall, M.D. of Crew Medical center prescribed Plaintiff Percocet and Lorazepam. (R. at 377.) On February 15, 2011, Plaintiff attended a follow-up

3

appointment with Dr. Hall. (R. at 377-78.) Dr. Hall completed an Attending Physician's Statement in which he opined that Plaintiff was disabled in part due to a cardiac contusion, ventricular tachycardia, diabetes, multiple fractures and a head injury. (R. at 378.) Dr. Hall also recorded that he had seen Plaintiff twice since Plaintiff was discharged from the hospital. (R. at 378.) Dr. Hall further opined that Plaintiff had been or would be continuously disabled from October 25, 2010, through the present (February 15, 2011). (R. at 378.) On March 22, 2011, Dr. Hall refilled Plaintiff's prescription for Percocet. (R. at 376.)

On June 29, 2011, Dr. Carey indicated that there had been no changes in Plaintiff's extremities or neurological state. (R. at 391-92.) Dr. Carey further reported that, by December 2010, Plaintiff's heart had recovered nicely from the cardiac contusion suffered in the car accident. (R. at 389.) Dr. Carey opined that Plaintiff's contusion did not result in any lasting consequence. (R. at 389.) Plaintiff was well-developed, well-nourished and in no acute distress. (R. at 391.) Dr. Carey recommended that Plaintiff begin a regular exercise routine to help with his obesity. (R. at 389.)

The record does not indicate that Plaintiff had further follow-up appointments with Dr. Hall after March 22, 2011. However, on January 3, 2012, Dr. Hall completed a Work-Related Limitations Form for Plaintiff. (R. at 384-87.) Dr. Hall indicated that Plaintiff's limitations stemmed from his accident on October 25, 2010, and Dr. Hall referenced his treatment notes from 2010 to support his conclusions regarding Plaintiff's limitations. (R. at 384-87.) Dr. Hall opined that Plaintiff's ability to lift and carry was impaired, and that Plaintiff was unable to completely bend over due to the injury that he sustained as a result of the car accident. (R. at 384.) Dr. Hall stated that Plaintiff was unable to stand, walk or sit uninterrupted for more than thirty minutes. (R. at 384-85.) Dr. Hall further indicated that Plaintiff could never climb, stoop,

crouch, kneel, crawl or push, and could occasionally balance. (R. at 385.) Plaintiff's ability to finger and feel was limited, and Plaintiff experienced shortness of breath. (R. at 385, 387.) Dr. Hall further opined that Plaintiff was totally disabled from any work activity. (R. at 386.) On January 3, 2012, Dr. Hall also prescribed for Plaintiff a cane, listing pelvic fractures, cardiac contusion and degenerative disc disease as the diagnoses. (R. at 388.)

### C. Plaintiff's Third Party Function Report

On April 22, 2011, Tabitha C. Lee, Plaintiff's girlfriend, completed a third-party function report for Plaintiff, describing his activities of daily living and condition. (R. at 156-66.) Plaintiff lived with Ms. Lee and her daughter. (R. at 156.) Ms. Lee indicated that Plaintiff spent most of his days watching television and taking walks around the house or, weather permitting, the neighborhood. (R. at 157.) Plaintiff owned approximately fifty cows, two dogs and one cat. (R. at 157.) Ms. Lee indicated that Plaintiff cared for the animals with the help of his parents, Ms. Lee and Ms. Lee's daughter. (R. at 157.) Plaintiff occasionally shopped in stores, washed the dishes and prepared sandwiches. (R. at 157, 159, 161.) Plaintiff fished and visited his family and friends two to three times per month. (R. at 161.) Plaintiff also visited his farm, which was located a quarter of a mile away from his home. (R. at 162.)

### D. Plaintiff's Testimony

On February 9, 2012, Plaintiff, represented by counsel, testified at a hearing before an ALJ. (R. at 18-37.) Plaintiff testified that he drove approximately three days per week for about thirty minutes at a time. (R. at 24.) Plaintiff also indicated that he could maybe lift two gallons of milk or about sixteen pounds at a time. (R. at 35.) Furthermore, on an average day, Plaintiff would walk around the circumference of his driveway for approximately five to ten minutes at a time. (R. at 35.)

E. Non-Treating State Agency Physicians' Opinions

On February 9, 2011, David C. Williams, M.D., a non-treating state agency physician, opined that Plaintiff's condition was severe at that time, but was expected to improve. (R. at 53.) Specifically, Dr. Williams indicated that Plaintiff's condition would not remain severe enough for twelve months such that Plaintiff would be unable to work. (R. at 53.) On May 13, 2011, Richard Surrosco, M.D. made the same findings as Dr. Williams, noting that Plaintiff's condition would not remain severely disabling for twelve months. (R. at 57, 60.) On May 17, 2011, Patricia Bruner, Ph.D. opined that Plaintiff did not suffer from any medically determinable impairment. (R. at 58.)

## II. PROCEDURAL BACKGROUND

On December 20, 2010, Plaintiff protectively filed an application for DIB. (R. at 116.) Plaintiff alleged disability due to back and heart problems with an alleged onset date of October 25, 2010. (R. at 131, 135.) The Social Security Administration ("SSA") denied Plaintiff's application initially and later on reconsideration. (R. at 63-71.) On February 9, 2012, a hearing was held before an ALJ during which Plaintiff testified. (R. at 18-47.) On February 24, 2012, the ALJ issued a written decision denying Plaintiff's claim for benefits. (R. at 7-17.) Thereafter, on April 30, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

## III. Questions Presented

1. Did the ALJ err in determining that Plaintiff's impairments were not expected to last for more than twelve months?

2. Did the ALJ err in affording the opinion of Plaintiff's treating physician less than controlling weight?

3. Did the ALJ err in determining that Plaintiff's obesity was not a severe impairment?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if substantial evidence supports the findings — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). If substantial evidence does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2000). An ALJ conducts the analysis for the Commissioner and it is that

process that a court must examine on appeal to determine whether the correct legal standards were applied and whether substantial evidence supports the resulting decision of the Commissioner.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, the impairment must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). Moreover, at step two, the claimant must show that his severe impairment satisfies the twelve-month durational requirement; otherwise, the ALJ will find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509.

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work based on an assessment of the claimant's RFC and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed,

then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock*, 667 F.3d at 472-73; *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A. The ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in SGA since October 25, 2010. (R. at 12.) At step two, the ALJ determined that Plaintiff had the medically determinable impairments of hypertension, diabetes, cardiac dysrhythmias, obesity, depression and alcohol abuse. (R. at 12.) However, the ALJ found that Plaintiff's impairments or combination of

impairments did not significantly limit his ability to engage in work for twelve consecutive months. (R. at 14.) Therefore, the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments. (R. at 14.) Because Plaintiff did not have a severe impairment or combination of impairments, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 14-17.)

Plaintiff argues that the ALJ improperly assessed Plaintiff's impairments as non-severe. (Pl.'s Mem. at 13.) Plaintiff further argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician. (Pl.'s Mem. at 15.) Finally, Plaintiff argues that the ALJ improperly failed to consider Plaintiff's obesity when determining the severity of Plaintiff's impairments. (Pl.'s Mem. at 17.) Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff's impairments were not severe and that Plaintiff was not disabled under the Act. (Def.'s Mem. at 8.) Defendant further contends that the ALJ properly discounted the opinion of Plaintiff's treating physician. (Def.'s Mem. at 9.) Defendant also asserts that the record does not support Plaintiff's contention that his obesity was a severe impairment. (Def.'s Mem. at 11.)

B. Substantial evidence supports the ALJ's determination that Plaintiff's impairments were not expected to last for more than twelve months.

Plaintiff argues that the "ALJ erred in finding that Plaintiff's cardiac contusion, fractured ribs, cervical spine injury, degenerative changes in the hips, loss of right eye vision and obesity were not severe impairments that lasted more than twelve months." (Pl.'s Mem. at 13.) Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff's impairments were not severe for purposes of the Act, thus Plaintiff was not under a disability. (Def.'s Mem. at 8.)

10

The second step of the ALJ's sequential analysis requires Plaintiff to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). Under the Act, a severe impairment that entitles one to benefits is one that must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The regulations require that Plaintiff be found not disabled at step two if he "do[es] not have a severe medically determinable physical or mental impairment *that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement.*" 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added). Section 404.1509 requires that Plaintiff's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Here, the ALJ denied Plaintiff's claim on the basis that his impairments had not lasted, and were not expected to last, for twelve months. (R. at 14.) Specifically, the ALJ found that Plaintiff's ability to perform basic work-related activities for twelve consecutive months was not significantly limited. (R. at 14.) Substantial evidence supports the ALJ's determination.

Plaintiff's alleged onset date is October 25, 2010, the date on which he drove while intoxicated and struck a tree, a telephone pole and another vehicle. (R. at 131, 290.) Plaintiff seeks DIB as a result of this automobile collision. (R. at 135.) Although Plaintiff did suffer numerous injuries and remain at the hospital for seventeen days as a result of the crash, by November 9, 2010 — less than one month following the crash — Plaintiff was doing "remarkably well." (R. at 290-91, 343, 346, 367, 373.) Plaintiff's physician specifically

reported that Plaintiff was "able to climb two flights of stairs and walk in the hall with no assistance." (R. at 346.) Plaintiff was then discharged from the hospital on November 10, 2010. (R. at 378.)

Follow-up examinations from December 2010 through June 2011 revealed that Plaintiff's condition had improved. On December 15, 2010, Plaintiff's attendants reported that Plaintiff had been doing well since he was discharged from the hospital. (R. at 343.) Specifically, Plaintiff's cardiac contusion had improved and his ventricular tachycardia was stable with no sign of recurrence. (R. at 342.) A physical examination revealed that Plaintiff was generally well-developed, well-nourished and in no acute distress. (R. at 344.) Plaintiff's heart had a regular rate and rhythm with no rubs, murmurs or gallops appreciated. (R. at 344.) Plaintiff had no focal deficits and had no clubbing, cyanosis, edema or deformity in his extremities. (R. at 345.) An echocardiogram indicated normal systolic function. (R. at 340-41.) Therefore, less than two months after the automobile crash, Plaintiff's conditions showed substantial improvement.

On February 15, 2011, Plaintiff attended a follow-up appointment with Dr. Hall during which Dr. Hall only opined that Plaintiff had been or would be continuously disabled from October 25, 2010, through the present (February 15, 2011). (R. at 378.) On March 22, 2011, Dr. Hall gave Plaintiff a prescription for Percocet. (R. at 376.) The only further contact set forth in the record is dated January 3, 2012, when Dr. Hall prescribed Plaintiff a cane. (R. at 388.) With this exception, the record does not indicate that Plaintiff had any additional follow-up appointments with Dr. Hall after March 22, 2011. Dr. Hall also completed a work limitations form for Plaintiff on January 3, 2012; however, for the reasons discussed below, this form was properly entitled to little weight. (R. at 384-87.)

On June 29, 2011, Dr. Carey, Plaintiff's hospital physician, indicated that there had been no changes in Plaintiff's extremities or neurological state. (R. at 391.) Dr. Carey further reported that, by December 2010, Plaintiff's heart had recovered nicely from the cardiac contusion suffered in the car accident, and that the contusion had not resulted in any lasting consequence. (R. at 389.) Dr. Carey also noted that Plaintiff was well-developed, well-nourished and in no acute distress. (R. at 391.) Further, Dr. Carey recommended that Plaintiff begin a regular exercise routine to help with his obesity. (R. at 389.) Therefore, medical records from Plaintiff's treating physicians do not demonstrate that his impairments satisfy the duration requirements.

Further, Plaintiff's activities of daily living suggest that his impairments do not satisfy the durational requirements. On April 22, 2011, six months following the automobile crash, Ms. Lee indicated that Plaintiff spent most of his days watching television and taking walks around the house or, weather permitting, the neighborhood. (R. at 157.) Ms. Lee stated that Plaintiff, with the help of his family, helped care for the animals that he owned: approximately fifty cows, two dogs and one cat. (R. at 157.) Plaintiff also occasionally shopped in stores, washed the dishes and prepared sandwiches. (R. at 157, 159, 161.) Moreover, Plaintiff fished and visited his family and friends two to three times per month. (R. at 161.) Plaintiff also visited his farm, which was located a quarter of a mile away from his home. (R. at 162.)

The opinions of the non-treating state agency physicians also suggest that Plaintiff's impairments failed to meet the durational requirement. On February 9, 2011, four months after the automobile crash, Dr. Williams indicated that Plaintiff's condition was severe at that time, but was expected to improve. (R. at 53.) Specifically, Dr. Williams opined that Plaintiff's condition would not remain severe enough for twelve months such that Plaintiff would be unable

to work. (R. at 53.) Dr. Surrosco made the same findings in May 2011 and noted that Plaintiff's condition would not remain severely disabling for twelve months. (R. at 57, 60.) Similarly, on May 17, 2011, roughly seven months from the automobile crash, Dr. Bruner opined that Plaintiff did not suffer from any medically determinable impairment. (R. at 58.)

Given the history of Plaintiff's medical treatment relating to the automobile crash, Plaintiff's activities of daily living and the opinions of the state agency physicians, substantial evidence supports the ALJ's determination that Plaintiff's impairments were not severe enough to limit his ability to perform basic work-related activities significantly for twelve consecutive months, as required by the regulations for a finding of disability.

### C. Substantial evidence supports the ALJ's determination to afford less than controlling weight to the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating physician. (Pl.'s Mem at 15.) Defendant argues that substantial evidence supports the ALJ's assignment of weight. (Def.'s Mem. at 9.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight

14

to properly analyze the evidence involved. 20 C.F.R. §§ 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the individual opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. 20 C.F.R. §§ 404.1527(d)(3)-(4), (e).

The ALJ is required to consider the following when evaluating a treating source's opinions: (1) the length of the treating source's relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(d)(2)-(6); SSR 06-3p. However, those same regulations specifically vest the ALJ — not the treating sources — with the authority to determine whether a claimant is disabled as that term is defined by statute. 20 C.F.R. § 404.1527(e)(1).

Here, because the record contained multiple medical opinions, the ALJ was forced to reconcile Dr. Hall's opinion and the medical evidence. Ultimately, the ALJ gave no significant weight to Dr. Hall's opinion, because Dr. Hall's conclusion that Plaintiff was totally disabled lacked support and was inconsistent with other evidence of record. (R. at 16.) Substantial evidence supports the ALJ's decision.

On January 3, 2012, Dr. Hall opined that Plaintiff was totally disabled from any work activity. (R. at 386.) However, Dr. Hall had apparently not seen Plaintiff since March 2011, when Dr. Hall refilled Plaintiff's Percocet prescription. (R. at 376.) Before March 2011, Dr. Hall had only treated Plaintiff immediately after the accident while Plaintiff was hospitalized and during two office visits on November 15, 2010, and February 15, 2011. (R. at 378.) Therefore, when Dr. Hall completed the work-related limitations form in January 2012, he had not seen Plaintiff for at least nine months. The limited length and infrequency of Plaintiff's treatment with Dr. Hall support the ALJ's assignment of weight.

Moreover, Dr. Hall's conclusion that Plaintiff was totally disabled was inconsistent with other medical evidence. On June 29, 2011, Dr. Carey opined that, by December 2010, Plaintiff's heart had recovered nicely from the cardiac contusion. (R. at 389.) Moreover, Dr. Carey opined that Plaintiff's cardiac contusion did not result in any lasting consequence. (R. at 389.) Dr. Carey also reported that Plaintiff was well-developed, well-nourished and in no acute distress. (R. at 391.) Furthermore, rather than suggesting Plaintiff was totally disabled, Dr. Carey recommended that Plaintiff begin a regular exercise routine. (R. at 389.) Also, Dr. Williams and Dr. Surrusco both determined that the evidence did not show that Plaintiff suffered from a severe, totally disabling impairment. (R. at 53, 57, 60.)

Additionally, Plaintiff's activities of daily living undermine Dr. Hall's conclusion that Plaintiff was totally disabled. Plaintiff could walk around his house and walk outside by himself. (R. at 157.) Plaintiff cared for approximately fifty cows, two dogs and a cat with the help of his parents and girlfriend. (R. at 157.) Plaintiff fished and visited family and friends two to three times per month. (R. at 161.) Plaintiff also visited his farm, which was located a quarter of a mile from his home. (R. at 162.) Further, Plaintiff testified that he drove roughly three days per

week for approximately thirty minutes at a time. (R. at 24.) Plaintiff also testified that he could lift two gallons of milk, or about sixteen pounds, at a time. (R. at 35.) Substantial evidence, therefore, supports the ALJ's decision to give no significant weight to Dr. Hall's opinion.

### D. Substantial evidence supports the ALJ's determination that Plaintiff's obesity was not a severe impairment.

Plaintiff argues that the ALJ improperly failed to consider Plaintiff's obesity when determining the severity of Plaintiff's impairments. (Pl.'s Mem. at 17.) Defendant responds that substantial evidence supports the ALJ's determination. (Def.'s Mem. at 11.)

While obesity is no longer an independently valid impairment, it warrants consideration in conjunction with any related musculoskeletal, respiratory or cardiovascular conditions. SSR 02-1p, at 1. The commissioner should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps." SSR 02-1p, at 1. The ALJ is required to consider the effects of Plaintiff's obesity combined with her other impairments; however, the ALJ must "not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p. Additionally, as long as the ALJ based his determinations on sources that were aware of Plaintiff's obesity, he satisfied this requirement. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "[b]ecause her doctors must also be viewed as aware of [Plaintiff]'s obvious obesity . . . the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition").

Contrary to Plaintiff's assertion, the ALJ properly considered evidence of Plaintiff's obesity in making his severity determination. (R. at 12, 14, 16.) The ALJ first found that Plaintiff's obesity was a medically determinable impairment. (R. at 12.) The ALJ then discussed Plaintiff's obesity in conjunction with his other impairments. (R. at 13, 16.)

Specifically, the ALJ discussed Plaintiff's obesity-related dyspnea, ability to ambulate and recommended course of treatment. (R. at 13, 16.)

While Plaintiff experienced shortness of breath with exercise, his oxygen saturation remained at 93 to 94 percent at rest, and Dr. Carey noted that Plaintiff did not have an oxygenation problem, but a "work of breathing problem." (R. at 389.) Moreover, Plaintiff experienced no wheezes. (R. at 389.) Dr. Carey reported that Plaintiff's obesity was related to his dyspnea and work of breathing problem; however, he did not recommend an aggressive course of treatment to address Plaintiff's obesity. (R. at 389.) Rather, Dr. Carey recommended that Plaintiff begin to exercise regularly and consider starting a diet. (R. at 389.) Moreover, as the ALJ noted, the record does not indicate that Plaintiff had any follow-up visits with Dr. Carey regarding obesity. (R. at 13, 389.) It is almost impossible to consider the amplifying effects of Plaintiff's obesity if his medical records did not document such information. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that [Plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restriction.").

Further, the ALJ correctly noted the lack of evidence establishing that Plaintiff had difficulty ambulating or was unable to perform fine or gross movements effectively, even considering Plaintiff's obesity. (R. at 16.) On November 9, 2010, Dr. Carey reported that Plaintiff was "able to climb two flights of stairs and walk in the hall with no assistance." (R. at 346.) On December 15, 2010, Dr. Carey's office noted that Plaintiff had no clubbing, cyanosis, edema or deformity in his extremities, and that Plaintiff had no focal deficits and grossly intact cranial nerves. (R. at 345.) On June 29, 2011, Dr. Carey reported no changes in Plaintiff's extremities or neurological state. (R. at 392.)

While the evidence of record mentions Plaintiff's obesity, it does not indicate that Plaintiff's obesity caused him significant limitations, alone or in conjunction with his other impairments. The ALJ is required to consider the effects of Plaintiff's obesity combined with her other impairments; however, the ALJ must "not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p. Rather than demonstrating that Plaintiff's obesity was severe, his medical records and recommended course of treatment suggest that Plaintiff's obesity did not cause him significant functional limitations. Substantial evidence, therefore, supports the ALJ's decision not to find Plaintiff's obesity to be severe.

## VI. CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14), Denies Plaintiff's Motion to Remand (ECF No. 15), GRANTS Defendant's Motion for Summary Judgment (ECF No. 17) and AFFIRMS the final decision of the Commissioner.

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

An appropriate Order shall issue.

                                                    /s/
                                    David J. Novak
                                    United States Magistrate Judge

Date: May 13, 2014
Richmond, Virginia